UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

**ROBERT BALDWIN**                                    **CIVIL ACTION NO.**

**VERSUS**                                                    **23-583-JWD-EWD**

**CERTAIN UNDERWRITERS LLOYDS**
**LONDON SUBSCRIBING TO**
**CERTIFICATE NUMBER**
**B1180D200657/784LA**

**NOTICE AND ORDER**

On August 24, 2023, Robert Baldwin ("Plaintiff") filed his Complaint and Demand for Jury Trial ("Complaint") in this Court against Certain Underwriters Lloyds, London Subscribing to Certificate No. B1180D200657/784LA ("Lloyds"). Plaintiff seeks insurance proceeds and benefits for damages and losses to Plaintiff's rental property purportedly caused by Hurricane Ida under a policy of insurance issued by Lloyds.[1] Plaintiff asserts that this Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332.[2] However, citizenship and the amount in controversy have not been adequately alleged in the Complaint as explained below.

*Citizenship of the Parties*

Proper information regarding the citizenship of all parties, and the amount in controversy, is necessary to establish the Court's diversity jurisdiction. The Complaint properly alleges that Plaintiff is domiciled in and a citizen of Louisiana.[3] However, the Complaint's allegation regarding Lloyds citizenship, which is that it is a "licensed insurance company, incorporated in Illinois" with its "principal place of business at 42 West 54th Street, 14th Floor, New York, New York,"[4] appears

---

[1] *See, generally*, R. Doc. 1.
[2] R. Doc. 1, ¶ 5.
[3] *Id*. at ¶ 2.
[4] *Id*. at ¶¶ 3, 5

1

to be incorrect. "[T]he 'Lloyd's market presents a unique structure for jurisdictional analysis.'"[5] As explained by this Court in *Cannon*, in 1871, the members of Lloyds' underwriting community were united by Parliament as a society and corporation incorporated under the name of Lloyds, and thereafter became a participant in London's insurance market. The underwriter members of Lloyds are referred to as "Names," and various Names band together annually to form various Syndicates. It is these Syndicates which actively participate in the business of insuring risks, while the Names provide the capital to do so. Thus, it is the Names who carry the underwriting risk, sharing in the profit or loss of the business.[6] For diversity purposes, every association other than a corporation "must be treated like a partnership," and Lloyds is considered an unincorporated association.[7]

In this case, as in *Louisiana Restaurant Association v. Certain Underwriters at Lloyds, London,* and *NL Indus., Inc. v. OneBeacon Am. Ins. Co.*, the plaintiffs named "Certain Underwriters at Lloyd's, London" and therefore sued all Names subscribing to the Lloyds's policy in question, not an individual underwriter.[8] As succinctly explained in *NL Industries, Inc.*:

> In this case, NL sued Certain Underwriters at Lloyd's of London. As such, the suit is against each Name or Underwriter who is a subscriber to the policies in question. These Underwriters are described as "syndicates,[9] corporations, and other entities that are

---

[5] *Cannon v. ZC Sterling Ins. Agency, Inc.,* No. 09-819, 2010 WL 11538352, at *1 (M.D. La. Apr. 6, 2010), citing *E.R. Squibb & Sons, Inc. v. Accident & Cas. Ins. Co.*, 160 F.3d 925, 930 (2d Cir. 1998).
[6] *Cannon,* 2010 WL 11538352, at *1
[7] *Cannon,* 2010 WL 11538352, at *1, citing *Carden v. Arkoma Associates*, 494 U.S. 185 (1990) and *Aetna Cas. & Sur. Co. v. Hillman*, 796 F.2d 770, 775 (5th Cir. 1986).
[8] *Louisiana Rest. Ass'n, Inc. v. Certain Underwriters at Lloyds, London,* 573 F.Supp.3d 1054, 1057 (E.D. La. 2021), and *NL Indus., Inc. v. OneBeacon Am. Ins. Co.,* 435 F.Supp.2d 558, 560 (N.D. Tex. 2006).
[9] *See Louisiana Rest. Ass'n, Inc.,* 573 F.Supp.3d at 1059 ("[A] Syndicate is a creature of administrative convenience through which individual investors can subscribe to a Lloyd's policy. A Syndicate bears no liability for the risk on a Lloyd's policy. Rather, **all liability is born[e] by the individual Names who belong to the various Syndicates that have subscribed to a policy**. Each Syndicate appoints a managing agent who is responsible for the underwriting and management of each Name's investments. The managing agent receives this authority through contracts with each Name. The managing agent, which is typically a legal entity, appoints one of its employees to serve as the 'active' underwriter for the Syndicate. The active underwriter selects the risks that the Names in the syndicate will underwrite and has the authority to bind all Names in the Syndicate. The active underwriter has the authority to buy and sell insurance risks on behalf of all Names in the syndicate, and to bind the Syndicate members in these transactions."), citing *Corfield v. Dall. Glen Hills LP,* 355 F.3d 853, 857-59 (5th Cir. 2003) (as emphasized in quote). *See also* 573

2

       citizens of the United Kingdom or of the United States." Pl.'s Original Pet. ¶ 4. As NL has sued numerous Names, they are the 'real' parties to this action, and their citizenship must be distinctly and affirmatively set forth, or established by proof. This is not a situation like that present in *Corfield* where only *one* Name or Underwriter was a party to the suit.[10]

As noted in *Louisiana Restaurant Association*, the majority view is that, when, as here, the Names are the real parties in the action, each Name must be identified and its citizenship alleged.[11] Accordingly, Plaintiff must identify, and affirmatively allege the citizenship of, each Name under the Lloyds policy at issue.

    <u>Amount in Controversy</u>

Plaintiff's Complaint specifically pleads that the amount in controversy exceeds $75,000, exclusive of interest and costs.[12] This allegation would typically satisfy a plaintiff's burden to establish that the amount in controversy requirement is met, but the fact that Plaintiff has named

---

F.Supp.3d at 1059-60 ("Federal courts have reached two very different results when determining the citizenship of a Lloyd's syndicate. Most courts to consider the issue have held that 'an underwriting syndicate [is] a citizen of all jurisdictions in which its individual investors, known as 'Names,' [are] citizens, not only of the jurisdiction of the underwriter who acted as a managing agent'…Thus, '[f]ederal courts across the nation have agreed, though through different rationales, that when determining the diversity of citizenship of the parties in a case involving Lloyd's of London, all the 'names' must be taken into consideration'") citing 13F Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3630.1, at 251 (3d ed. 2009) (other internal case citations omitted) and *Johnson v. Certain Underwriters at Lloyd's London*, No. 09-2495, 2009 WL 3232006, at *3 (E.D. La. Oct. 2, 2009) (adopting as its holding the "majority view" that the citizenship of all names must be considered for purposes of diversity jurisdiction) (collecting cases).

[10] 435 F.Supp.2d at 564.

[11] *Louisiana Rest. Ass'n, Inc*, 573 F.Supp.3d at 1061-62, citing *Certain Underwriters at Lloyd's London Subscribing to Policy No. B066421355A04 v. Washington*, No. 09-3195, 2009 WL 5215927, at *4-5 (E.D. La. Dec. 28, 2009) (agreeing with "multiple other jurists of the Eastern District of Louisiana and other Circuit Courts that the citizenship of the Names, as the real parties to the controversy, must be considered for purposes of diversity of citizenship jurisdiction"). *See also id.* at 1062 ("Other sections of this Court have come to this same conclusion. *See, e.g.*, *Jefferson v. Am. Sugar Refin., Inc.*, 2017 WL 894652, at *3 (Mar. 7, 2017) (holding that complete diversity was not established given failure to allege citizenship of all names underwriting Lloyd's policy); *Advanced Sleep Ctr., Inc. v. Certain Underwriters at Lloyd's London*, 2015 WL 4097069, at *2 (E.D. La. July 7, 2015) (holding that 'the Names are the 'real' parties to this action, and their citizenship must be distinctly and affirmatively set forth or established by proof'); *Rips, LLC v. Underwriters at Lloyd's London*, 2015 WL 2452339, at *3 (E.D. La. May 21, 2015) (holding that citizenship of Lloyd's names was not satisfactorily pleaded to support diversity jurisdiction); *Johnson*, 2009 WL 3232006, at *3-4 (holding that the citizenship of all names must be considered for purposes of diversity jurisdiction); *St. Charles Prop. Ass'n v. Certain Underwriters at Lloyd's London*, 2009 WL 3232034, *4 (E.D. La. Oct. 2, 2009) (same); *Walle Bldg. Condo. Ass'n v. Certain Underwriters at Lloyd's London*, 2008 WL 4412250, at *2-3 (E.D. La. Sept. 18, 2008) (dismissing case for lack of subject-matter jurisdiction where plaintiff failed to carry its burden of establishing that all names subscribing to the policy were diverse).").

[12] R. Doc. 1, ¶ 5.

3

certain Lloyd's underwriters impacts the pleading requirements for the amount in controversy. In *Rips, LLC v. Underwriters at Lloyd's London,* the Eastern District of Louisiana noted that there are "a number of cases from [the Eastern District] as well as a Fifth Circuit opinion [that] affirm Lloyd's assertion that the $75,000 minimum must be met against each individual Name."[13] The *Rips, LLC* court permitted the plaintiff to file an amended complaint in order to adequately allege that the $75,000 jurisdictional amount was met for *each* Name.[14] *Rips, LLC*, and several other more recent cases citing *Rips, LLC*,[15] are well-reasoned and persuasive. Accordingly, to establish diversity subject matter jurisdiction in this case, Plaintiff must also plead that the amount in controversy is met as to each Name identified, if possible.

The Court *sua sponte* raises the issue of whether it may exercise diversity jurisdiction in this matter, specifically whether there is complete diversity of citizenship among the parties and whether the amount in controversy is met.[16]

---

[13] *Rips, LLC v. Underwriters at Lloyd's London*, No. 14-1969, 2015 WL 2452339, at **2-3 (E.D. La. May 21, 2015) *and see id*: "In *G & M Holding, Inc. v. Certain Underwriters at Lloyd's of London,* the court granted dismissal both because the plaintiff had failed to assert facts to indicate that 'the amount in controversy is met as to all Names sued under the policy' and because at least one Name was non-diverse. Civ. A. No. 07–4883, 2008 WL 215842, *2 (E.D. La. Jan. 23, 2008). In *McAuslin v. Grinnell Corp.,* Judge Vance likewise found that jurisdiction was lacking both because several Names were non-diverse, and because 'all but one of the Names lack[ed] the requisite amount in controversy.' Civ. A. No. 97–803, 2000 WL 1059850, *4 (E.D. La. Aug. 1, 2000). In *Team One Properties, LLC v. Certain Underwriters at Lloyd's, London,* the Court dismissed the action because the total amount in controversy against *all* Names was only $47,594.37, not because the $75,000 minimum was not met as to each Name. However, the opinion referenced Judge Vance's holding in *McAuslin* as guidance. Civ. A. No. 07–4493, 2007 WL 4365392, *4 (E.D. La. Dec. 10, 2007). The Fifth Circuit upheld the ruling, stating that the 'district court found that Team One did not demonstrate that the amount in controversy against *any* completely diverse underwriter was in excess of the jurisdictional $75,000 exclusive of interest and costs.' *Team One Properties LLC v. Certain Underwriters at Lloyds London,* 281 Fed.Appx. 323, *1 (5th Cir. 2008)."
[14] *Rips, LLC,* 2015 WL 2452339, at *4.
[15] *See Park 10 Hosp., LLC v. Certain Underwriters at Lloyd's London,* No. 19-05013, 2020 WL 5554225, at *2 (S.D. Tex. Sept. 16, 2020) ("It is also necessary that the amount in controversy be established as to each Name."); *Lloyd's v. Gailes,* No. 16-77, 2016 WL 3033741, at *4 (N.D. Miss. May 26, 2016) ("…in order to satisfy the jurisdictional requirements, the Plaintiffs must show that the jurisdictional minimum of $75,000.00 has been satisfied as to each 'Name.'"), citing *Advanced Sleep Ctr., Inc. v. Certain Underwriters at Lloyd's London,* No. 14-592, 2015 WL 4097069, at *3 (E.D. La. July 7, 2015)(granting remand and holding: "…the amount-in-controversy requirement must be met as to each Name."); and *NAG, Ltd. v. Certain Underwriters at Lloyds of London,* No. 16-16728, 2017 WL 490634, at *4 (E.D. La. Feb. 6, 2017) (granting remand and noting: "Moreover, a Fifth Circuit opinion and numerous decisions from the Eastern District of Louisiana affirm that the amount in controversy must be established as to each Name subscribing to the policy.").
[16] *See McDonal v. Abbott Laboratories*, 408 F.3d 177, 182 n. 5 (5th Cir. 2005) ("[A]ny federal court may raise subject matter jurisdiction *sua sponte*.").

4

Accordingly,

**IT IS ORDERED** that, on or before **October 18, 2023,** Plaintiff Robert Baldwin shall file a motion for leave to file an amended Complaint with a proposed pleading that is a comprehensive amended Complaint (*i.e.*, includes all of Plaintiffs' numbered allegations, as revised, supplemented, and/or amended), which adequately alleges the citizenship of all parties, and the amount in controversy, to establish that the Court has diversity jurisdiction over the case, and which will become the operative Complaint in this matter without reference to any other document in the record. **Alternatively,** Plaintiffs may file a notice of dismissal under Fed. R. Civ. P. 41(a)(1)(A)(i) if he cannot meet the requirements to establish this Court's subject matter jurisdiction.

The case will be allowed to proceed if jurisdiction is adequately established.

Signed in Baton Rouge, Louisiana, on October 4, 2023.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**